**Lauro T. YSASI, Plaintiff–Appellant,**

v.

**Perry RIVKIND, District Director of the Immigration and Naturalization Service, Alan Nelson, Commissioner of the Immigration and Naturalization Service, United States of America and Robert Adams, Defendants–Appellees.**

**Appeal Nos. 87–1422, 88–1019.**

United States Court of Appeals, Federal Circuit.

Sept. 2, 1988.

Nora Leto, of Florida Rural Legal Services, Inc., Bartow, Fla., argued for plaintiff-appellant.

Jacob M. Lewis, of the Civil Div., Dept. of Justice, Washington, D.C., argued for defendants-appellees. With him on brief were Richard K. Willard, Asst. Atty. Gen., Robert M. Merkle, U.S. Atty., and John F. Cordes, Washington, D.C.

Before SMITH, BISSELL and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Lauro T. Ysasi appeals from judgments of the United States District Court for the Middle District of Florida dated October 9,

1986 and May 15, 1987 granting summary judgment in favor of the United States and three officials of the Immigration and Naturalization Service (INS) and denying Ysasi's claim for damages arising out of the seizure of his truck by United States Border Patrol (Border Patrol) agents.[1] We affirm-in-part, vacate-in-part and remand.

## BACKGROUND

Ysasi, a migrant farm worker, was stopped by Border Patrol agents on September 30, 1983 while driving his truck in Florida. Ysasi admitted to them that his brother-in-law, a passenger in the truck, was an illegal alien, that he had picked him up in Victoria, Texas shortly after his illegal entry into the United States, and that he had transported him from Texas to Ohio and then to Florida in search of work. Based on this information, the Border Patrol agents seized Ysasi's truck pursuant to 8 U.S.C. § 1324(b), which allows seizure of vehicles used in the commission of acts listed in 8 U.S.C. § 1324(a).[2] Section 1324(a) makes it a crime to transport an undocumented alien in furtherance of the alien's violation of the immigration laws.[3] Ysasi was officially notified by letter dated October 4, 1983 that his truck had been seized.

As a means of seeking return of his truck, Ysasi requested and was granted a personal interview with a Border Patrol agent in accordance with 8 C.F.R. § 274.5(c) (1983). Following the interview on October 12, 1983, the agent determined, based on Ysasi's admissions and his sworn written statement, that there had been probable cause to seize the truck and informed Ysasi that the truck would not be returned to him. Ysasi then filed an administrative claim for return of the truck with the INS pursuant to 8 C.F.R. § 274.10 (1983). On October 31, 1983, General Motors Acceptance Corp. (GMAC), which had a lien on the truck, filed a Petition for

---

1. The Border Patrol is a division of the INS. 8 C.F.R. § 100.2(b)(1)(i) (1988).

2. 8 U.S.C. § 1324 (1982) states in pertinent part:
   **§ 1324. Bringing in and harboring certain aliens**
   **(a) Persons liable**
   Any person ... who—

   · · · · ·

   (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last *entry into the United States occurred less than* three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

   · · · · ·

   any alien ... shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs....
   **(b) Seizure and forfeiture of conveyances; exceptions; officers and authorized persons; disposition of forfeited conveyances; suits and actions**
   (1) Any ... vehicle ... which is used in the commission of a violation of subsection (a) of this section shall be subject to seizure and forfeiture....
   (2) Any conveyance subject to seizure under this section may be seized without warrant if there is probable cause to believe the conveyance has been used in a violation of subsection (a) of this section and circumstances exist where a warrant is not constitutionally required.
   (3) All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for the violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof, except that duties imposed on customs officers or other persons regarding the seizure and forfeiture of conveyances under the customs laws shall be performed with respect to seizures and forfeitures carried out under the provisions of this section by such officers or persons authorized for that purpose by the Attorney General.

3. At the time of the seizure in this case, the person transporting the alien had to know or have reasonable grounds to believe the alien entered the country unlawfully within the previous three years in order to have violated section 1324. 8 U.S.C. § 1324(a) (1982). Ysasi admitted to such knowledge, but denied that his actions were "in furtherance of" a violation of law.

Remission or Mitigation with the INS pursuant to 8 C.F.R. § 274.14 (1983). Ysasi thereafter requested waiver of the required bond, which at that time was $250.00. The INS, without instituting judicial forfeiture proceedings, informed Ysasi by letter dated November 4, 1983 that his truck was being remitted to GMAC and that his claim would not be considered. It indicated that consideration had been given to the large amount of GMAC's lien.

Thereafter, Ysasi filed an administrative claim with INS for damages in the amount of $8,052.53. When that claim was denied, Ysasi filed suit in the district court claiming damages for (1) negligence under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1982), (2) breach of an implied contract of bailment under the Tucker Act, 28 U.S.C. § 1346(a)(2) (1982), and (3) due process and equal protection violations under the theory of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics (Bivens)*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Ysasi's complaint named as defendants Perry Rivkind, in his official capacity as District Director of the INS, Alan Nelson, in his official capacity as Commissioner of the INS, and the United States.

The district court dismissed District Director Rivkind, who was not appointed until three months after the seizure, from the case and on October 9, 1986, granted the government's motion for summary judgment. The court (1) held that Ysasi's claim for damages under the FTCA was barred by 28 U.S.C. § 2680(c) (1982), which provides that the FTCA shall not apply to "[a]ny claim arising in respect of the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer," (2) held that Ysasi was not entitled to recovery under the Tucker Act because he had not "raised any genuine issue of fact suggesting gross negligence" which is a prerequisite to prevailing on a claim of loss by a gratuitous bailee, and (3) dismissed Ysasi's *Bivens* claim against Commissioner Nelson, finding that the allegations were insufficient to establish an affirmative link between Com-

missioner Nelson and any actions taken against Ysasi.

After the October 9 summary judgment, Ysasi moved to amend his complaint to add as defendants Ed O'Connor, Regional Commissioner of the INS, and Robert Adams, Chief Patrol Agent. The court modified the October 9 judgment and allowed Ysasi to amend his complaint to assert a *Bivens* claim against Adams because it found that the allegations were not "facially meritless." On May 15, 1987, however, the court dismissed Ysasi's *Bivens* claim against Adams stating that Ysasi had abandoned alternative remedies to challenge the forfeiture and that the existence of such alternative remedies barred a *Bivens* action. The court also held that, even if Ysasi was allowed to pursue his *Bivens* claims, Adams had qualified immunity for his decision to deny Ysasi's request for waiver of the bond.

Ysasi filed notices of appeal from the October 9 and the May 15 judgments in the United States Court of Appeals for the Eleventh Circuit. Pursuant to the Supreme Court's decision in *Hohri v. United States*, —— U.S. ——, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987), the appeals were transferred to this court where they were consolidated.

## ISSUES

1. Whether the district court erred in concluding that the exception in 28 U.S.C. § 2680(c) for "customs and other law enforcement officers" bars an action against the United States arising out of a seizure by Border Patrol agents.

2. Whether the district court erred in concluding that there were no genuine issues of material fact and that the government was entitled to judgment as a matter of law on Ysasi's Tucker Act claim for breach of an implied bailment contract.

3. Whether the district court erred in concluding that there were no genuine issues of material fact and that Border Patrol agent Adams was entitled to judgment as a matter of law on Ysasi's *Bivens* claim.

## OPINION

A district court's grant of summary judgment will be affirmed when the record below reveals that there was no genuine issue as to any material fact and that the movant was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed. Cir.1985). "[T]he district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor and must resolve all doubt over factual issues in favor of the party opposing summary judgment." *Id.* (citations omitted). In all substantive law fields except those assigned exclusively to this court, the district court should follow the guidance of its particular circuit. *U.S. v. (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 997 (Fed.Cir.1987); *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1438–40, 223 USPQ 1074, 1086–88 (Fed.Cir.1984). Accordingly, our review of the district court's holdings as to Ysasi's FTCA and *Bivens* claims, which are not matters within this court's exclusive jurisdiction, is governed by the law of the Eleventh Circuit rather than by the law of this court. Because, under 28 U.S.C. § 1295(a)(2) (1982), this court has exclusive jurisdiction over an appeal from a final decision of a district court where the jurisdiction of that court was based, in whole or in part, on the Tucker Act, our review of the district court's holdings on that issue is governed by the law of this circuit. *Atari, Inc.*, 747 F.2d at 1438–40, 223 USPQ at 1086–88.

### I. *FTCA Claim*

■ The FTCA is a waiver of the sovereign immunity of the United States. It provides generally that the United States shall be liable, to the same extent as a private party, "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); *see* 28 U.S.C. § 2674 (1982). Section 2680(c) is an exception to the FTCA which in effect reimposes sovereign immunity with respect to

> Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer.

28 U.S.C. § 2680(c).

Ysasi contends that application of section 2680(c) to section 1324 seizures by the Border Patrol division of the INS is unprecedented and that case law indicates that it is applicable only to seizures made pursuant to the tax laws or customs law. The government, on the other hand, argues that the phrase "any other law enforcement officer" appearing in section 2680(c) should be read broadly to encompass all federal law enforcement officers. We agree with the district court that the clear weight of authority favors the government's position.

In *Kosak v. United States*, 465 U.S. 848, 854, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984), the Supreme Court determined that section 2680(c) includes within its scope any claim " 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained property." While the Court expressly declined to decide what kinds of law enforcement officers other than customs officials the section covers, *Kosak*, 465 U.S. at 852 n. 6, 104 S.Ct. at 1522–23 n. 6, it did quote from a report which states that section 2680(c) "has special reference to the detention of imported goods in appraisers' warehouse or customs houses, *as well as seizures by law enforcement officers, internal revenue officers, and the like.*" *Kosak*, 465 U.S. at 856, 104 S.Ct. at 1524 (quoting A. Holtzoff, *Report on Proposed Federal Tort Claims Bill 16* (1931)) (emphasis added). Certainly the government's broad reading of the section comports with the report, the *Kosak* opinion and the plain language of the statute, whereas Ysasi's interpretation would render the phrase "or any other law enforcement officer" surplusage.

The Eleventh Circuit has not addressed the question of the meaning of "other law enforcement officer." However, four oth-

er courts of appeals have done so and have refused to limit the scope of section 2680(c) to law enforcement officers acting in a customs or tax capacity. The Second Circuit applied the section to bar FTCA actions involving seizures by federal narcotics agents, *Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2d Cir.1985); the Seventh Circuit held that the section applies to seizures by Food and Drug Administration agents, *United States v. 1500 Cases, More or Less,* 249 F.2d 382 (7th Cir.1957); the Ninth Circuit applied it to the seizure of an airplane by Federal Aviation Administration officials, *United States v. Lockheed L–188 Aircraft,* 656 F.2d 390 (9th Cir.1979), and to the seizure of currency by federal narcotics agents, *United States v. $149,345 United States Currency,* 747 F.2d 1278 (9th Cir.1984); and the Tenth Circuit found it applicable to seizures by Department of Agriculture agents, *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1490–91 (10th Cir.), *cert. denied sub nom. Jarboe–Lackey Feedlots, Inc. v. United States,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

These decisions are persuasive and we are convinced the Eleventh Circuit would adopt the same position. We also note that the meager legislative history of section 2680(c) is not in any way inconsistent with the interpretation given the statute by these courts. *See Kosak,* 465 U.S. at 855–61, 105 S.Ct. at 1524–27. Furthermore, 8 U.S.C. § 1324(b)(3) directs that all provisions of law relating to seizures for violation of the customs laws shall apply to seizures under section 1324(b)(1), indicating the similarity of the violations of law here to violations of the customs laws. We, therefore, agree with the district court that seizures pursuant to section 1324(b)(1) are "sufficiently akin to the functions carried out by Customs officials to place the agents' conduct within the scope of section 2680(c)." *Formula One Motors, Ltd.,* 777 F.2d at 824. We conclude that the district court correctly held that Ysasi's FTCA claim was barred by section 2680(c) and that the government was entitled to judgment as a matter of law.

## II. *Tucker Act Claim*

The Tucker Act, 28 U.S.C. § 1491 (1982), provides jurisdiction in the United States Claims Court for any claim against the United States which is "founded ... upon any express or implied contract with the United States...." The district courts have jurisdiction concurrent with that of the Claims Court to resolve similar claims under $10,000. 28 U.S.C. § 1346(a)(2) (1982).

Ysasi contends that he is entitled to recover under the Tucker Act because the seizure of his truck gave rise to an implied bailment contract. It is well-settled that the Tucker Act grants jurisdiction over claims founded on contracts implied-in-fact but not over those implied-in-law. *United States v. Minnesota Mut. Inv. Co.,* 271 U.S. 212, 217–18, 46 S.Ct. 501, 503, 70 L.Ed. 911 (1926). To prove that an implied-in-fact contract exists, a claimant must show "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

Ysasi does not allege any facts that would "evidence a promise, representation or statement by any authorized government official" that his truck would be returned to him. *Shaw v. United States,* 8 Cl.Ct. 796, 799 (1985). Instead, he contends that an implied-in-fact bailment arose because he filed a claim for the truck's return, thereby indicating his denial of the commission of any violation of law. He argues that forfeiture was proper only upon the commission or concession of a violation of law, and that because he had not committed such a violation he had a reasonable expectation that his truck would be returned to him. *See* 28 U.S.C. § 2465 (1982); 8 C.F.R. § 274.5(c) and (d) (1983). Assuming, as Ysasi argues, that transporting his brother-in-law to look for work was not a violation of law, *see United States v. Merkt,* 764 F.2d 266, 271–72 (5th Cir.1985); *United States v. Salinas–Calderon,* 585 F.Supp. 599, 601–02 (D.Kansas 1984), and

that there was a duty to return the truck because the forfeiture was improper, this would at most create a bailment by operation of law, not an implied-in-fact bailment contract. *See Shaw*, 8 Cl.Ct. at 799; *Hatzlachh Supply Co. v. United States*, 7 Cl.Ct. 743, 748–51 (1985). In the absence of an implied-in-fact contract, we find no error in the district court's conclusion that the government was entitled to judgment as a matter of law on Ysasi's Tucker Act claim.

### III. *Bivens Claim*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the subject of an arrest and search alleged to be violative of the Fourth Amendment brought suit for damages against the responsible federal agents. Although the FTCA prohibited such an action, 28 U.S.C. § 2680(h) (1982), the Supreme Court held that a citizen suffering a compensable injury to constitutionally protected interests could invoke the general federal-question jurisdiction of the district courts and bring a cause of action for monetary damages directly under the Constitution. Subsequently, the Supreme Court applied *Bivens* to allow a direct action under the Fifth Amendment. *Davis v. Passman*, 442 U.S. 228, 248–49, 99 S.Ct. 2264, 2279, 60 L.Ed.2d 846 (1979). The Court has stated, however, that a *Bivens* action may be defeated if Congress has provided an "equally effective" alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution. *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); *Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05.

Ysasi contends that he was deprived of property in violation of his Fifth Amendment due process and equal protection rights when Border Patrol agent Adams failed to give him notice of the denial of his bond waiver request, failed to give him an opportunity to pay the bond, failed to give him an opportunity to appeal the denial of the waiver, and erroneously remitted his truck to GMAC. He also argues that the INS should have initiated judicial forfeiture proceedings. 8 C.F.R. § 274.10 (1983).

The district court dismissed Ysasi's *Bivens* claims stating that they were not appropriate because alternative remedies were available to him. According to the court, Ysasi "should have moved for reconsideration by Mr. Adams, proffered a cost bond, or moved for a writ under 5 U.S.C. §§ 705, 706." The court added that even if Ysasi were allowed to pursue the *Bivens* claims, Adams had qualified immunity because the decision whether to grant the waiver request was a discretionary act which was within his line of duty. Finally, the court stated that Adams was "only required to initiate forfeiture proceedings if he was presented with a claim and either a bond or a valid petition for waiver of the bond.... As the waiver was not approved, and as [Ysasi] abandoned his direct challenges to the forfeiture, Adams' actions under § 274.10 were proper."

We conclude that the court erred in dismissing Ysasi's *Bivens* claims on summary judgment because there were genuine issues of material fact as to whether Ysasi was afforded any opportunity to pursue alternative remedies and whether Adams was entitled to qualified immunity.

In order to obtain judicial review of the validity of a seizure pursuant to section 1324(b), a claimant must file a claim and post a bond to cover all costs and expenses of the proceedings. Under 8 C.F.R. § 274.10(a), the regional commissioner of INS may, in his discretion, waive the bond requirement in the manner set forth in 8 C.F.R. § 103.7(c)(1) (1983). According to 8 C.F.R. 274.10(c), the filing of a claim and the posting of bond does not entitle the claimant to possession of the vehicle but it does stop summary forfeiture proceedings.

■ We are convinced that the only reasonable interpretation and application of these regulations is that when a waiver request is denied, the claimant must be given notice of the denial and an opportunity to post bond before summary forfeiture is effected. The filing of the claim and the request for waiver in lieu of bond at least

conditionally satisfies the requirements of the regulations for judicial consideration in lieu of summary proceedings. If the waiver is granted, nothing more need be done by the claimant to perfect his entitlement to have a judicial forfeiture proceeding. On the other hand, if the waiver is denied, having already conditionally satisfied the regulations the claimant is entitled to be notified of the denial and given a reasonable opportunity to post bond or to request reconsideration of his bond waiver petition before the summary procedure is applicable. *See In re Williams*, 628 F.Supp. 171, 172–73 (E.D.N.Y.1986) (in a case involving Drug Enforcement Administration seizure governed by the customs laws, due process required agency which rejected claimant's pauper's affidavit to allow claimant opportunity to file bond prior to forfeiture). If, as Ysasi alleges, his truck was summarily forfeited at the same time his request for waiver of the bond was denied, he was not given this opportunity.[4]

■ In *Sanchez v. Adams*, No. 83–369–CIV–Hastings (A.D.Fla. filed Feb. 14, 1983), it was alleged, as it is here, that Adams denied a claimant an opportunity to post bond and/or ask for reconsideration of the bond waiver denial. Although the *Sanchez* case was ultimately settled, it was filed before the seizure of Ysasi's truck and raises the factual question of whether Adams knew or should have known that his actions were inconsistent with the regulations and could represent a denial of due process or equal protection under the Constitution. If Adams possessed such knowledge, he may not be entitled to qualified or good faith immunity from damages liability. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987) (question is whether officials could have believed their actions to be lawful in light of clearly-established law and the information they possessed); *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

The district court stated that its suggested alternative remedies would have "preserved the asset—the truck—and allowed judicial review of the decision to not allow a waiver of the cost bond." Ysasi, on the other hand, asserts that "there was no vehicle left for [him] to claim from the Defendants" because possession of his truck had already been transferred to GMAC. He bases this assertion on the letter of November 4, 1983 from INS which denied his waiver request and informed him that his truck "is being returned" to GMAC.[5] He notes in this regard that administrative remedies need not be exhausted where the remedies are inadequate or futile. *United Farmworkers of America, AFL–CIO v. Arizona Agricultural Employment Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir.1982). It would have been pointless for Ysasi to request reconsideration of his bond waiver request, to post bond, or to petition pursuant to 5 U.S.C. § 705 for postponement of the effective date of the agency's action if in fact possession of the truck had already been transferred to GMAC.

Finally, we cannot agree that Adams was entitled to judgment as a matter of law.

---

**4.** We note in this connection that the 1982 regulations pertaining to section 1324(b)(1) seizures provided that

> [i]f the documents are not in satisfactory condition when first received, the person claiming the conveyance and furnishing the bond shall be advised by letter as to the inadequacy of the documents and advised that he has 20 days from the date of the letter to correct the documents. If correction is not made within the time allowed, the documents may be treated as of no effect and the case shall proceed as though they had not been tendered.

8 C.F.R. § 274.9 (1982). While this language was not contained in the 1983 regulations, its absence cannot be regarded as eliminating the requirement for notice subsequent to 1982. *See* 8 C.F.R. § 274.14(e) (1983) which provides:

> Where rival claimants exist, remission will not be granted to any petitioner who has a subordinate lien to another petitioner *nor until any claim of the registered owner has been finally adjudicated.* (Emphasis added.)

**5.** A copy of the letter was not provided in the record on appeal. It is quoted in pertinent part on page 5 of the Brief for Appellees as follows: the "vehicle is being returned to General Motors Acceptance Corp., Ft. Myers, Florida," which "has established proof of a first perfected lien," and that the affidavit requesting waiver of the bond "cannot now be considered."

Although a comprehensive statutory and regulatory scheme was available under the immigration laws for challenging the validity of an improper seizure, *see Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), utilization of the available procedures appears to have been frustrated in this case, not by Ysasi, but by Adams. Adams allegedly transferred possession of the truck to GMAC without providing Ysasi an opportunity to take the steps necessary under the prescribed procedures to obtain judicial review of the agency's action. *Cf. Rauschenberg v. Williamson,* 785 F.2d 985, 986 (11th Cir.1986). If Adams improperly foreclosed this avenue of relief, he must demonstrate that any purported alternative remedy available to Ysasi is equally effective. *Cf. Carlson v. Green,* 446 U.S. at 18–20, 100 S.Ct. at 1471–72; *Davis v. Passman,* 442 U.S. at 248, 99 S.Ct. at 2279. Otherwise, the alternative remedy will not defeat his *Bivens* claim. This Adams has not done.

Because of the genuine issues of material fact and because Adams has not established that alternative remedies are both available and equally effective, a question which turns in part on factual issues, we conclude that the district court erred in granting summary judgment on Ysasi's *Bivens* claim.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of the government on Ysasi's FTCA and Tucker Act claims. We vacate its grant of summary judgment in favor of Adams on the *Bivens* claim and remand for further consideration consistent with this opinion.

## COSTS

Each party shall bear its own costs on appeal.

AFFIRMED–IN–PART, VACATED–IN–PART AND REMANDED.