**J.S.G. BOGGS, Plaintiff,**

v.

**UNITED STATES, et al., Defendants.**

**No. CIV.A.95–1051 (RCL).**

United States District Court,
District of Columbia.

Oct. 29, 1997.

---

Kent A. Yalowitz, Philip W. Horton, Bruce R. Kelly, Marla Eisland, Washington, DC, for Plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Michael Ryan, Asst. U.S. Atty., U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (3), and (6), on cross-motions for summary judgment, and on defendants' motion to transfer the action to the Western District of Pennsylvania or the judicial district where plaintiff resides. For the reasons stated below, this court will: 1. deny defendants' 12(b)(1) motion to dismiss the Federal Tort Claims Act claim for lack of subject matter jurisdiction; 2. grant defendants' 12(b)(3) motion to dismiss the FTCA claim for improper venue; 3. grant defendants' motion for summary judgment as to the adequacy of the Freedom of Information Act searches; and 4. deny the cross-motions for summary judgment on the FOIA exemption claims until submission of proper *Vaughn* indices by defendants.

## I. BACKGROUND

Plaintiff J.S.G. Boggs ("Boggs") is a visual and performance artist whose work is displayed in the permanent collections of the Smithsonian Institution, the Museum of Modern Art, the British Museum and the Art Institute of Chicago. This case centers around the pieces for which Mr. Boggs has received his greatest acclaim and notoriety: his works "in the image of money"—so called "Boggs Bills"—which are actual size, color reproductions of U.S. currency.

Great minds have always differed as to the merit of art, and Mr. Boggs' travails demonstrate that adage. On or about December 2, 1992, special agents of the Secret Service executed search warrants for plaintiff's person, his residence and studio, and his office, all located in Pittsburgh, Pennsylvania. The Secret Service had probable cause to believe that the aforementioned locations contained hand drawn facsimiles, prints, photographs, photocopies and other impressions of United States obligations and securities including various denominations of United States cur-

rency in violation of 18 U.S.C. §§ 474 and 504. Pursuant to the warrant, the Secret Service searched the specified locations for more than three hours and seized over 100 drawings and numerous other items.

In this action[1], plaintiff has stated two claims. The first is asserted under the Federal Tort Claims Act, 28 U.S.C. S § 2671 et, seq. ("FTCA"). Boggs alleges that in the course of their search, the Secret Service agents damaged or destroyed several items of Boggs' personal property through intentionally destructive conduct. He also claims that some of the items seized by the agents are now missing, and that there was negligent and/or wrongful interference with his property rights. These acts allegedly caused total property damages in the amount of $64,952.95. Boggs also contends that the agents engaged in negligent and/or wrongful conduct during the searches. For example, he states in his complaint that they improperly threatened him with arrest and made veiled threats about the unpleasantries of prison life. These threats and other acts of misconduct purportedly caused Boggs to suffer severe emotional distress, requiring hospitalization and other medical treatment. Boggs claims damages in the amount of $2,000,000 for this alleged misconduct.

Boggs' second claim arises under the Freedom of Information Act and Privacy Acts ("FOIA"), 5 U.S.C. §§ 552 and 552a. Boggs, through counsel, made a written request on May 14, 1993 for all documents concerning this matter. The Secret Service withheld some of the requested materials, invoking 5 U.S.C. § 552(b)(7)(matters compiled for law enforcement purposes)[2]; 552(b)(2)(information that pertains solely to the internal personnel rules and practices of an agency); 552(b)(5) (inter- and intra- agency materials that would not be available by law to a party other than an agency in litigation with the agency). On August 23, 1993, Boggs,

through his attorney, filed an administrative appeal, and the Secret Service responded by providing some additional documents while also denying the appeal in part, citing the same exemptions.

On March 10, 1995, Boggs made another written request pursuant to FOIA. Among other items, this request sought documents formerly withheld pursuant to the "enforcement proceedings" exemption of FOIA. The government provided some responsive documents, but again withheld certain information pursuant to 5 U.S.C. §§ 552(b)(5) and 552(b)(7)(C). Having properly exhausted his administrative remedies under 5 U.S.C. § 552(a)(6)(C), Boggs asks this court to declare the Secret Service's failure to disclose the requested records unlawful and order the agency to make the records available. In addition, Boggs questions the thoroughness of the Secret Service's effort and seeks to have this court order a more "complete" search for any additional relevant documents or records.

## II. SUBJECT MATTER JURISDICTION UNDER THE FEDERAL TORT CLAIMS ACT

■ The Federal Tort Claims Act provides that the United States shall be liable to the same extent as a private party, "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment . . . in accordance with the law of the place where the act or omission occurred" 28 U.S.C. § 1346(b). This congressional waiver of sovereign immunity is subject to thirteen exceptions, under which a federal court lacks subject matter jurisdiction over the claim. 28 U.S.C. §§ 2680(a)-(n). Defendant contends that the Secret Service's conduct in this matter falls under one of these excep-

1. Boggs has a second suit pending, *Boggs v. Bowron*, 987 F.Supp. 1, in which he asserts that the seizures violated his First Amendment rights and requests return of the "art" seized by the Secret Service. These claims will be addressed in a separate opinion.

2. Specifically: § 552(b)(7)(A) (could reasonably be expected to interfere with enforcement proceedings); (7)(C) (could reasonably be expected to constitute an unwarranted invasion of personal privacy); (7)(D) (could reasonably be expected to disclose the identity of a confidential source); (7)(E) (would disclose techniques and procedures for law enforcement investigations and prosecutions).

tions, namely, § 2680(c), which proscribes suits involving:

> [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

Defendants' Motion to Dismiss and plaintiff's opposition engage in a debate over the sweep of this exception; specifically, whether the phrase "other law enforcement officer" should be interpreted broadly to apply to all law enforcement officers acting in any capacity, or narrowly, to only those officers acting in either a customs or tax capacity. The Supreme Court, in *Kosak v. United States*, 465 U.S. 848, 852 n. 6, 104 S.Ct. 1519, 1522–23 n. 6, 79 L.Ed.2d 860 (1984), expressly left this question unanswered, and the circuits are split as to the proper interpretation.

A number of circuits that have addressed the § 2680(c) issue have interpreted the exception broadly, concluding that the statute was meant to include all law enforcement officers, in any capacity, acting within the scope of their offices of employment. *See, e.g., Ysasi v. Rivkind*, 856 F.2d 1520, 1524–25 (Fed.Cir.1988) (sovereign immunity reestablished for the acts of the Border Patrol division of the Immigration and Naturalization Service); *United States v. $149,345 United States Currency*, 747 F.2d 1278, 1283 (9th Cir.1984) (applied to Drug Enforcement Administration agents pursuant to 21 U.S.C. § 881, and noting that the "apparent intent of § 2680(c) is to limit government liability and restrict claimants to the statutory procedures of the forfeiture laws") *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1490–91 (10th Cir.), *cert. denied sub nom. Jarboe–Lackey Feedlots, Inc. v. United States*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984) (section 2680(c) applied to seizures by the Department of Agriculture); *United States v. Lockheed L–188 Aircraft*, 656 F.2d 390, 397 (9th Cir.1979)(applied to the FAA).

Underpinning this interpretation of § 2680(c) is the general presumption that a congressional waiver of sovereign immunity should be interpreted narrowly. "We should also have in mind that the [Federal Tort Claims] Act waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *U.S. v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *see also* 14 *Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure* § 3654 (1985) ("if Congress in fact has consented to a particular kind of suit . . . the general rule long has been that the government's consent is to be strictly interpreted."). Also supporting this conclusion is the argument that, if Congress did not intend to extend the exception to all law enforcement officers, the statute would have been written without the last six words. *See Ysasi*, 856 F.2d at 1524 ("Ysasi's interpretation would render the phrase 'or any other law enforcement officer' surplusage").

This court, however, finds plaintiff's interpretation of the statute to be in accord with the law of this circuit, traditional canons of statutory interpretation, and the original rationale underpinning the FTCA's waiver of sovereign immunity. Consequently, this court holds that there is subject matter jurisdiction over Boggs' FTCA claim.

Recognizing that the phrase "any other law enforcement officer" was open to two plausible interpretations, the D.C. Circuit held against the then-prevailing majority view in narrowing the § 2680(c) FTCA exception. In *Bazuaye v. United States*, 83 F.3d 482 (D.C.Cir.1996), a postal inspector seized plaintiff's bail money, suspecting that the enclosed money orders, money transfers and U.S. currency were the ill-gotten gains of plaintiff's criminal activities. *Id.* at 483. Plaintiff subsequently filed suit under the FTCA, alleging that the postal inspector acted negligently and improperly in executing the seizure. In determining whether the phrase "any other law enforcement officer" included postal employees acting outside the customs or tax areas, the Court of Appeals relied on the principle of *esjudem generis*, which states that a general term should be read in the context of the specific terms

preceding it.[3] The court noted:

> In the clause "any officer of customs or excise or any other law-enforcement officer," the words "any other law-enforcement officer" might mean other officers involved in customs and excise work, but not officers in unrelated duties. Otherwise, "any officer of customs or excise" would be surplusage, subsumed by the more general "any other law enforcement officer."

*Id.* at 484 (citations omitted); *see also Kurinsky v. United States*, 33 F.3d 594, 598 (6th Cir.1994) (the words "any other law enforcement officer" should be read as to include the detention of goods by only law enforcement officers acting in a tax or customs capacity).

Had Congress intended § 2680(c) to have the scope suggested by defendants, the statute could have been drafted to read, simply, "any claim arising in respect to the detention of goods or merchandise by any law enforcement officer." The inclusion of the "law enforcement officer" language in a statute that otherwise focuses on tax and customs activity inexorably leads to the conclusion that the law enforcement activity hypothesized must have some nexus to customs or tax enforcement. If the greater (all law enforcement officers) was to include the lesser (customs and tax only), then the lesser would become, for all practical purposes, meaningless. Rather, the rationale behind the inclusion of the "other law enforcement officer" phrase was "Congress' recognition of the fact that federal officers, other than customs and excise officers, sometimes become involved in the activity of detaining goods for tax or customs purposes." *Kurinsky*, 33 F.3d at 597 (quoting *A–Mark, Inc. v. United States Secret Service*, 593 F.2d 849, 851 (9th Cir.1978) (Tang, J., concurring)). The phrase was not meant to be a broad re-establishment of sovereign immunity, but rather a recognition that many different types of law enforcement officials may from time to time be called upon to assist in customs and tax enforcement. Congress intended for the § 2680(c) exception to focus on the type of law enforcement being executed, not the "title" or "department" of the particular law enforcement officer. The six word phrase under consideration was included to accomplish that goal—and nothing more.

Just as the rules of statutory interpretation led this circuit to interpret § 2680(c) as an exception limited to tax and customs enforcement, a consideration of Congress's rationale behind creating the exception demands the same conclusion.

■ The Federal Tort Claims Act was promulgated to combat the injustice that often resulted from the broad sovereign immunity enjoyed by the United States; namely, that a plaintiff who fell down the stairs in someone's private home could sue in tort, but one who fell down the stairs of a federal building was without any remedy. Notably, however, at common law, a plaintiff *could* recover against a customs officer for the negligent damaging of goods, and against a tax collector for improper seizures of property. *See Bazuaye*, 83 F.3d at 484–85 (citing cases). Consequently,

> When Congress exempted from the FTCA claims "arising in respect of . . . the detention of any goods or merchandise by any officer of customs or excise or any law enforcement officer," 28 U.S.C. 2680(c), plaintiffs already had another way to recover·from the government for the actions of customs officers, tax officers, and other officers acting under the customs and tax laws. These plaintiffs did not need the waiver of sovereign immunity provided by the FTCA. For them, "adequate remedies" were already available.

*Id.* at 485. Since adequate remedies were *not* available for the actions of law enforcement officers not engaged in customs or tax

---

**3.** The court used an example from Justice Scalia's concurring and dissenting opinion in *United States v. Aguilar*, 515 U.S. 593, 613–15, 115 S.Ct. 2357, 2369, 132 L.Ed.2d 520 (1995) to demonstrate how the words preceding can create context for the words following. Scalia pointed out that if a statute lists "fishing rods, nets, hooks, bobbers, sinkers and 'other equipment,' " the phrase 'other equipment' becomes a more limited catch-all. The Court of Appeals noted that the phrase "other equipment" language in Scalia's example might include plastic worms and fishing line, but would not include snow shovels and baseball bats. *Bazuaye*, 83 F.3d at 484.

enforcement, it stood to reason that the waiver of sovereign immunity for their torts should be retained. Consequently, the narrow interpretation of the "other law enforcement officers" language best comports with the purpose behind the FTCA—to provide compensation for the tortious acts of federal officers when there exists no other means to redress that injury.

Factually, *Bazuaye* and the instant case are similar—both involved seizures by officers who were clearly acting in a capacity unrelated to the enforcement of tax or customs laws. In *Bazuaye,* the seizure was performed by a postal inspector attempting to prevent the receipt of what he believed to be fraudulently obtained funds. Here, the enforcement of counterfeiting statutes necessitated the search. In neither case was customs or tax enforcement even tangentially at issue. This court sees nothing that distinguishes the instant case from *Bazuaye* on the specific § 2680(c) question such that a different conclusion should be reached.

■ Given the D.C. Circuit's holding in *Bazuaye,* the rules of statutory interpretation, and the policy behind the § 2680(c) exception, this court is compelled to hold that the phrase "other law enforcement officer" addresses only law enforcement officers acting in a tax or customs capacity. Because it is undisputed that the Secret Service agents who seized Boggs' property were neither tax nor customs officers, nor acting in that capacity when executing their search, section 2680(c) is inapplicable, subject matter jurisdiction is proper, and defendants' motion to dismiss the FTCA claim under Fed.R.Civ.P. 12(b)(1) must be denied.

## III. VENUE

■ Defendants next move to dismiss plaintiff's FTCA claim, or, in the alternative, to transfer it to the Western District of Pennsylvania (the judicial district in which Boggs' residence and studio were located) or to his current place of residence. They cite the venue provision for federal tort claims, 28 U.S.C. § 1402(b), which calls for prosecution "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." It is uncontroverted that plaintiff is not a resident of the District of Columbia and that the seizure complained of occurred in Pittsburgh, Pennsylvania. Consequently, had the FTCA claim been plaintiff's only cause of action, venue would be improper in the federal district for the District of Columbia. For a federal court to hear a case or controversy, venue must be proper for *each* claim. *Lamont v. Haig,* 590 F.2d 1124, 1135 (D.C.Cir. 1978); 15 *Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure,* § 3808 ("in a case in which multiple claims are joined, the venue must be proper for each claim").

■ Plaintiff does not contest the assertion that the FTCA venue provision would normally preclude hearing the claim in this district. Rather, he seeks to have this court apply the doctrine of pendent venue—a relative of pendent jurisdiction—in which a federal court hears claims for which venue is otherwise not proper in the interests of sound judicial economy. *Seamon v. Upham,* 563 F.Supp. 396, 398–99 (E.D.Tx.1983) (noting that if a court seeks to exercise pendent venue, it should consider the same factors as when it decides whether to exercise pendent jurisdiction); *see also Travis v. Anthes Imperial Limited,* 473 F.2d 515, 529 (8th Cir. 1973). This circuit's clearest pronouncement on this doctrine comes from *Reuber v. United States,* 750 F.2d 1039 (D.C.Cir.1984), in which the Court of Appeals listed three factors to consider in reviewing the propriety of pendent venue: 1. whether the claims originate from a common nucleus of operative fact; 2. the existence of common issues of proof; and 3. the existence of similar witnesses. *Reuber,* 750 F.2d at 1048; *Laffey v. Northwest Airlines, Inc.,* 321 F.Supp. 1041, 1042 (D.D.C.1971). The *Reuber* court also stated that a determination as to whether to apply pendent venue belonged in the sound discretion of the district court, *id.,* and that there is a "strong presumption against a court finding discretionary pendent venue" when considering claims under the FTCA. *Id.* at 1048–49.

The court finds that this is not a case in which the exercise of pendent venue is appropriate. Although the FOIA and FTCA

claims ostensively derive from the same common nucleus of operative fact—the first of the *Reuber* factors—the issues of proof are almost entirely different. A review of plaintiff's complaint demonstrates this point. The FTCA claim involves the conduct of the Secret Service as it executed the search of Boggs' home and studio and the alleged wrongful and/or negligent misconduct of the agents during the execution of that search. Proof of the tort will require plaintiff either to prove intentional misconduct or to establish that a duty was owed to him by the Secret Service, that there was a breach of that duty, causation, and compensable damages. The FOIA and Privacy Act claims, on the other hand, involve requests for documents made well after the complained-of seizure. Proof of that claim requires a court to review the Secret Service's assertion that the requested documents were properly withheld. Between the FTCA and FOIA claims there are arguably *no* common issues of proof. Nor would their be any similar witnesses; the agents involved in the search of Boggs' premises are different from the agents involved in compiling the FOIA responses.[4]

◼ Plaintiff accurately notes in his Cross–Motion for Partial Summary Judgment that this controversy consists of two separately-captioned actions that arise out of the same December 2, 1992 search. Plaintiff asks that, in considering the concept of sound judicial management that underlies the exercise of pendent venue, this court should also consider his First Amendment claims and his claims for the return of the seized items from *Boggs v. Bowron*, 987 F. Supp. 1 ("*Bowron*"). Plaintiff contends that when the claims are considered as a whole, the interrelatedness of the issues is such that pendent venue is appropriate.

It is this court's conclusion that there is not the requisite similarity of proof and wit-

nesses between the FTCA claim and the *Bowron* claims such that pendent venue should be exercised. The *Bowron* claims require this court to consider, among other issues, whether judicial approval is required to seize expressive materials, whether the Boggs Bills are, in fact, expressive materials, and whether these works should now be returned in light of the fact that the government has elected not to prosecute. See Statement of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment in *Boggs v. Bowron.* A comprehensive consideration of these issues would not require this court to consider the specific conduct of the Secret Service agents on Boggs' premises on December 2, 1992. And it is *only* the conduct of the Secret Service on Boggs' premises on December 2, 1992 that is at issue in the FTCA action; the court that hears this claim will not have to address whether the Boggs Bills are expressive materials, whether they are contraband, or whether the seized materials should be returned in light of the failure of the government to prosecute Mr. Boggs. Even when this court considers all of the claims arising from all of the cases filed by Boggs, the cleavage between what is required to prove the FTCA claim and what is required to prove all other claims is such that sound judicial management calls for the dismissal of the FTCA claim here in the District of Columbia.

◼ Finally, under this circuit's holding in *Reuber,* there is a strong negative presumption against finding pendent venue for claims arising under the FTCA. Congress, in crafting the FTCA venue statute, expressly declared that *only* the district in which the act occurred or plaintiff's place of residence are acceptable places to bring the action. *Reuber,* 750 F.2d at 1048–49; *see also Bartel v. F.A.A.,* 617 F.Supp. 190, 199 n. 38 (D.D.C. 1985) (declining to exercise pendent venue with respect to a FTCA claim and citing

---

4. This court also elects to proceed with great caution in using claims originating under FOIA as the "hook" on which a party might attempt to make a claim of pendent venue, in that it might encourage forum shopping. Under the FOIA venue statute, 5 U.S.C. 552(a)(4)(B), venue is always proper in the District of Columbia. To permit the exercise of pendent venue on the facts

in this case—where there are neither common issues of proof nor common witnesses and evidence—would have the effect of *always* allowing a related claim to proceed in this judicial district whenever a FOIA claim derived from the same "common nucleus of operative fact" as some other cause of action.

*Reuber* for the proposition that the "FTCA creates a strong negative presumption against finding pendent venue where not permitted under 28 U.S.C. § 1402(b)"). To permit pendent venue on the facts of this case would place this court in the position of circumventing otherwise clear congressional intent as to where FTCA claims are to be heard.

In support of its contention that this court should exercise pendent venue, plaintiff relies chiefly on *Beattie v. United States,* 756 F.2d 91 (D.C.Cir.1984), in which this circuit allowed a FTCA action to proceed in the District of Columbia, even though the tort occurred elsewhere and no there were no D.C. resident plaintiffs. However, *Beattie*'s facts are so unusual that the case can be readily distinguished. *Beattie* involved an action under the FTCA alleging negligence on the part of the U.S. Navy stemming from a plane crash. All of the plaintiffs were residents of either Great Britain or New Zealand, meaning that venue could not be established "in the judicial district where plaintiff resides." And, as the crash occurred in Antarctica, venue could not be established in the place where the acts complained of occurred. In determining that venue was proper in the District of Columbia, the court noted, "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional ground with the other." *Beattie,* 756 F.2d at 104 (quoting *Brunette Machine Works v. Kockum Industries, Inc.,* 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1938–39 n. 8, 32 L.Ed.2d 428 (1972)). The instant case, however, is not an exceptional case where dismissal would result in a "venue gap." Plaintiff freely admits that venue would be proper in the Western District of Pennsylvania. As there is a judicial district in which the case may be brought upon this court's dismissal, this court will not rely upon the unique facts from *Beattie* to create a general doctrine of pendent venue.

*Beattie* may also be distinguished because, in addition to the "Antarctica claims," there were also negligence claims asserted against officials of the United States for acts occurring in Washington, D.C. (described as the

"headquarters claims"). Consequently, there was proper venue in the District of Columbia for at least some of the FTCA claims, making pendent venue more logical. "In the present case, pendent venue is used to satisfy venue requirements for a portion of plaintiffs' FTCA claims, based on the satisfaction of venue requirements by the remainder of plaintiffs' claims in this FTCA case." *Beattie,* 756 F.2d at 103 n. 82. The *Beattie* court expressly distinguished this conclusion from the denial of pendent venue in *Reuber,* however, as it noted "[p]laintiff sought to use pendent venue [in *Reuber*] completely to circumvent the FTCA's venue provisions by bringing his FTCA claims under the general value provisions applicable to the Privacy Act." *Id.* Since in the instant case plaintiff has not made any claims under the FTCA addressing possible tortious conduct by government officials in Washington D.C., *Beattie*'s holding on pendent venue is inapposite, and this court will rely upon *Reuber* the controlling precedent.

Because venue for plaintiff's FTCA claim may lie only in the Western District of Pennsylvania or in the judicial district where plaintiff resides, and because the facts of this case do not overcome the strong negative presumption against a finding of pendent venue, this court will grant defendants' 12(b)(3) motion and dismiss the claim pursuant to 28 U.S.C. § 1406(a).

## IV. SUMMARY JUDGMENT ON FOIA CLAIMS

### A. The Search Was Adequate

█ In opposing defendants' motion for summary judgment on the FOIA claims, plaintiff first argues that summary judgment is improper because the Secret Service failed to conduct adequate searches. *See, e.g. Southam News v. I.N.S.,* 674 F.Supp. 881, 889–91 (D.D.C.1987) (denying the Department of State's motion for summary judgment because the Department conducted an insufficient search). In support of this contention, plaintiff asserts that his request for documents should have included "all locations with potentially responsive documents" (specifying eight different cities, from London to Honolulu) as well as "any other loca-

tion shown by your records to contain potentially responsive material." Defendants' Ex. 11. As evidence of the Secret Service's alleged inadequacy, plaintiff contends that it failed to describe with particularity the places searched, failed to demonstrate that the search methods were reasonably calculated to uncover relevant documents, and failed to explain how the searches were executed. *Steinberg v. United States Department of Justice*, 23 F.3d 548, 551–52 (D.C.Cir.1994); *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990). Plaintiff asks this court to order the Secret Service to conduct a more thorough search, presuming that the agency will uncover records supposedly not retrieved in either the 1993 or 1995 efforts.

█ For a FOIA search to be held sufficient and for the agency to prevail on summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Oglesby*, 920 F.2d at 68 (citing cases); *Weisberg v. Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984). The fact that documents may potentially exist that are responsive to the request does not defeat the government's demonstration that an adequate search was performed. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991) ("Mere speculation that as yet undiscovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Therefore, all this court must determine is whether the Secret Service's search passes the threshold test of reasonableness, not whether the fruits of the search met plaintiff's aspirations.

█ Unlike the level of documentation required for the government to invoke FOIA exemptions, see Part IV.B., the reasonableness of a search may be demonstrated by an affidavit, submitted in good faith, explaining in reasonable detail the scope and method of the search. *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982); *Kuffel v. United States Bureau of Prisons*, 882 F.Supp. 1116, 1120 (D.D.C.1995) ("The affidavits that agencies use to support allegations that they have conducted thorough searches in compliance with FOIA must be relatively detailed, nonconclusory and submitted in good faith."). In this case, the Secret Service has provided this court with documentation that meets the requisite standard. Based on that documentation, this court finds that the Secret Service has conducted legally adequate searches.

According to the Declaration of Albert V. Concordia, ("Concordia Declaration") the Secret Service's 1993 search included use of the Master Central Index; a check of all eight Secret Service field offices listed by Boggs; and a check of the records of the Intelligence Division, the Personnel Division and the Investigative Support and Research Division. And, in response to Boggs' 1995 FOIA request, the Secret Service conducted a renewed search, which included a search of the Secret Service's Office of Chief Counsel. The Concordia Declaration carefully describes, in 11 numbered paragraphs with subparagraphs, the exact steps taken by the Secret Service in fulfilling this request. It describes both what records were searched and what processes were used. *See Steinberg*, 23 F.3d at 552. The scope of this search, as described in the Concordia Declaration, demonstrates a good faith effort on the part of the Secret Service. This court also finds that the agency's methods were reasonably calculated to produce the information requested by Boggs.

Because this court concludes that the government has in good faith conducted an adequate, reasonable, and therefore legally sufficient search, this court will grant defendants' motion for summary judgment to the extent that they are not required to conduct any further searches pursuant to Boggs' request(s).

B. Defendant's Failure to Provide a Systematic Correlation Between the Exemptions Claimed and the Information Withheld Precludes an Award of Summary Judgment.

█ Pursuant to Boggs' initial FOIA and Privacy Act requests, the Secret Service provided some 1,500 pages of documents. See Plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion at 4. Some documents were withheld pursuant to 5

U.S.C. §§ 552(b)(2), (5), (7)(A), (C), (D), and (E); other documents which the agency did produce have portions redacted. Plaintiff appealed the withholding of this information and the redactions. The Secret Service granted the appeal in part, releasing certain information, while continuing to withhold some documents under the same exemptions. Plaintiff then submitted a second FOIA request, seeking some documents not provided in the original request, some documents created after the first request, and some documents withheld under the "enforcement proceedings" exemption of FOIA. The Secret Service responded to this request by providing some additional documents while withholding others pursuant to 5 U.S.C. § 552(b)(5) and (7)(C). Having properly exhausted his administrative remedies, plaintiff challenges the government's exemption claims and asks this court to order the Secret Service to make the withheld records available.

■ As plaintiff accurately notes in his Cross–Motion for Partial Summary Judgment, challenging the propriety of an agency's claim of exemption places that litigant in an unusual stance, in that he may not offer his own independent assessment as to whether the government's claim of privilege is properly exercised. *See Perry,* 684 F.2d at 126. Consequently, the agency seeking to withhold the information is directed to provide the court with "a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C.Cir.1994) (quoting *Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 128 (D.C.Cir.1987)). The manner in which a reviewing court is typically able to perform this analysis is through use of *Vaughn* indices, in which the agency provides a list of the challenged documents correlated by their claimed exemptions. *See Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973). Such correlation is necessary so that a reviewing court can effectively determine whether the agency's decision to withhold documents is justified. *See Krikorian v. Department of State,* 984 F.2d 461, 466–67 (D.C.Cir.1993) (reversing the district court for failure to make detailed findings as to withheld documents).

In the absence of an agency's provision of sufficient evidence that each document withheld is exempt from FOIA's inspection requirements, a court is precluded from awarding summary judgment to the government. *Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State,* 818 F.Supp. 1291, 1295 (N.D.Cal. 1992) (noting that the defending party must use *Vaughn* indices to prove its claim of exemption); *Gerash v. Smith,* 580 F.Supp. 808 (D.Colo.1984).

In this case, the government has elected not to provide this court with standard *Vaughn* indices. Rather, it seeks to justify its claim of privilege solely through use of an affidavit offered by Richard J. Griffin, Deputy Director of the United States Secret Service. ("Griffin Declaration"). In its Opposition to Plaintiff's Motion for Partial Summary Judgment, the government justifies this substitute for proper *Vaughn* indices by stating that "it is the function, not the form, of the *Vaughn* justification which is important." In further support of its exclusive use of the Griffin Declaration, the government quotes this circuit's holding in *Gallant,* contending, " 'the materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege.' " *Gallant,* 26 F.3d at 173 (quoting *Delaney,* 826 F.2d at 128).

Although under *Gallant* a *Vaughn* substitute may be deemed sufficient to allow a court to conduct its review of FOIA exemption claims, this court must deny defendants' summary judgment motion based on the paltry documentation the Secret Service has submitted. Defendants accurately note that, in certain circumstances, affidavits alone may be sufficient for the court to perform its review function if the affidavits are sufficiently detailed and nonconclusory. *See. e.g. American Petroleum Institute v. E.P.A.,* 846 F.Supp. 83, 87 (D.D.C.1994) (noting that if affidavits are sufficient, the district court may award summary judgment on that basis). However, the Griffin Declaration is insufficient. It does not give this court any reasonable basis to evaluate the government's claim of privilege. The Griffin Decla-

ration offers almost none of the elements typically found in a *Vaughn* index, such as the date of the document(s), the type of document, the general subject matter and the number of pages. For example, the agency, in one large sweep, seeks to exempt "drafts of legal documents, memoranda and notations prepared by the Office of Chief Counsel, comments and changes suggested by the Office of Chief counsel on draft legal documents prepared by the United States Attorney's Offices, comments or suggestions made by the office of Chief Counsel on briefs, motions and other papers filed by plaintiff in that civil litigation . . ." Griffin Declaration at 10–11. No specific documents are identified, under either this exemption claim or in any of the claims in the affidavit.

Had Agent Griffin provided a true *Vaughn* equivalent via his Declaration, with the requisite specificity, this court could, under the authority of *American Petroleum Institute,* have made an informed summary judgment determination. The Griffin Declaration is simply not adequate. To grant the Secret Service summary judgment—or to order the release of the documents—based solely upon this Declaration, without specific correlation of documents to exemptions, effectively deprives this court of its ability to determine whether the withholding of documents was proper. The unique nature of a FOIA exemption challenge—where only one of the two litigants knows the true nature of the subject of the litigation—demands that this court hold the government to its burden. For the court to proceed with its review at this point would require speculation and guesswork, which would be patently unfair to plaintiff.

In light of the failure of defendant to give this court any adequate means to evaluate the basis of its claim of privilege, defendants' motion for summary judgment is denied, and the Secret Service is instructed to provide this court with proper *Vaughn* indices.