Joromi H. BAZUAYE, Appellant

v.

UNITED STATES of America, Appellee.

No. 95–5063.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 29, 1996.

Decided May 21, 1996.

Deep S. Sran, student counsel, Baltimore, MD, argued the cause for appellant. With him on the briefs were Steven H. Goldblatt, Washington, DC, appointed counsel, and Daniel Crawford, student counsel.

Stacy M. Ludwig, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, Washington, DC.

Before: HENDERSON, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Secret Service agents arrested Joromi H. Bazuaye on October 16, 1991, for engaging in a scheme of credit card fraud. Soon after his arrest, Bazuaye attempted to secure his release on bail by having $11,000 in money orders, money transfers and U.S. currency delivered to a bail bondsman in the District of Columbia. But before Bazuaye could complete his bail arrangements, a U.S. postal inspector seized the funds on suspicion that they represented ill-gotten gains from Bazuaye's criminal activities. Bazuaye stayed in jail, and a federal grand jury returned a 12–count indictment against him. In February 1992, Bazuaye struck a deal with the government and pled guilty to a single count of possessing, with intent to defraud, 15 or more counterfeit or unauthorized "access devices" in violation of 18 U.S.C. § 1029(a)(3). He was sentenced to 37 months' imprisonment.

After unsuccessfully challenging his conviction and sentence, *United States v. Bazuaye*, 991 F.2d 791 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 278, 126 L.Ed.2d 228 (1993), Bazuaye filed this suit in the U.S. District Court for the District of Columbia. In it, he invoked the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, to allege that the postal inspector acted negligently and improperly in seizing the bail money. Bazuaye also claimed that the postal inspector's later forfeiture procedures were deficient under both the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the United States Constitution. The district court dismissed Bazuaye's FTCA claim and granted summary judgment for the government on his APA and constitutional claims. Bazuaye appeals only the FTCA decision.

The FTCA provides that the United States shall be liable for damages, to the same extent as a private party, "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2674; *Kosak v. United States*, 465 U.S. 848, 851–52, 104 S.Ct. 1519, 1522–23, 79 L.Ed.2d 860 (1984). This broad waiver of sovereign immunity is subject to 13 enumerated exceptions. 28 U.S.C. § 2680(a)–(n). One of them, § 2680(c), exempts from the FTCA's reach:

> Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c). The district court read that provision to preclude Bazuaye's claim. While acknowledging that "postal inspectors have never expressly been determined to be 'law-enforcement officer[s]'" within the meaning of § 2680(c), the district court saw "no principled reason why they should not be given [that] status due to the role that they play in forfeiture proceedings such as this one." We come to the opposite conclusion.

The meaning of § 2680(c)'s "any other law-enforcement officer" language presents a question of first impression in this circuit, a question left open in *Kosak*, 465 U.S. at 852 n. 6. As a split in the federal courts of appeals indicates, the language invites at least two plausible interpretations. Using a literal approach, two circuits hold that "any officer of customs or excise or any other law-enforcement officer" means any customs officers, any excise officers, or any other law-enforcement officers engaged in any kind of work "within their lawful duties." *See Halverson v. United States*, 972 F.2d 654, 656 (5th Cir.1992); *Schlaebitz v. United States Dep't of Justice*, 924 F.2d 193, 194 (11th Cir.1991).[1]

---

1. The Eighth and Ninth Circuits have applied § 2680(c) outside the customs and excise contexts without discussing the scope of "any other law-enforcement officer." *See Cheney v. United States*, 972 F.2d 247, 248 (8th Cir.1992); *United States v. $149,345*, 747 F.2d 1278, 1283 (9th Cir.1984); *United States v. Lockheed L–188 Aircraft*, 656 F.2d 390, 397 (9th Cir.1979). *But see A–Mark, Inc. v. United States Secret Serv.*, 593 F.2d 849, 850–51 (9th Cir.1978) (Tang, J., concurring).

Read in light of the traditional canons of statutory interpretation, however, the language takes on quite a different meaning. The principle of *ejusdem generis*—or "of the same kind, class or nature"—suggests that a general term should be read in light of the more specific terms preceding it. Thus, if a statute lists "fishing rods, nets, hooks, bobbers, sinkers and other equipment," see *United States v. Aguilar,* —— U.S. ——, ——, 115 S.Ct. 2357, 2369, 132 L.Ed.2d 520 (1995) (Scalia, J., concurring and dissenting), "other equipment" might mean plastic worms and fishing line, but not snow shovels or baseball bats. In the clause "any officer of customs or excise or any other law-enforcement officer," the words "any other law-enforcement officer" might mean other officers involved in customs and excise work, but not officers involved in unrelated duties.[2] Otherwise, "any officer of customs or excise" would be surplusage, subsumed by the more general "any other law-enforcement officer." *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). For these reasons, the Sixth Circuit has held that the words "any other law-enforcement officer" should be read to mean "law-enforcement officers acting in a tax or customs capacity." *Kurinsky v. United States,* 33 F.3d 594, 598 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995). The Second and Seventh Circuits have suggested—without deciding—that they would reach the same conclusion. *Paul v. United States,* 929 F.2d 1202, 1203 (7th Cir.1991); *Formula One Motors v. United States,* 777 F.2d 822, 823–24 (2d Cir.1985).

The government urges us to read § 2680(c) in light of another canon—one requiring strict construction of waivers of sovereign immunity—but the Supreme Court has specifically rejected that canon as "unhelpful" in interpreting § 2680(c). *Kosak,* 465 U.S. at 854 n. 9, 104 S.Ct. at 1524 n. 9. Rather, the Court has said that in construing § 2680(c), a court should "identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Id.* (quoting *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)). As we have just indicated, the "words" of § 2680(c) fall short of answering the question before us. We will therefore move on to the "reason" for the exception § 2680(c) creates.

The government directs us to a statement by Judge Alexander Holtzoff, who very likely drafted the language that became § 2680(c). Holtzoff wrote that § 2680(c) would exempt from the FTCA claims

> arising in respect of the assessment or collection of any tax or customs duty. This exception appears in all previous drafts. It is expanded, however, so as to include immunity from liability in respect of loss in connection with the detention of goods or merchandise by any officer of customs or excise. The additional proviso has special reference to the detention of imported goods in appraisers' warehouses or customs houses, as well as seizures by law-enforcement officials, internal revenue officers, and the like.

A. Holtzoff, Report on Proposed Federal Tort Claims Bill 16 (1931). Any attempt to parse this report suffers from the same interpretive problem plaguing § 2680(c) itself; the report, like § 2680(c), appears to concern solely customs and tax matters, with a few words about "law-enforcement" officers tacked on to the end. There is another problem with Judge Holtzoff's report. He wrote it 15 years before Congress adopted the FTCA. Whether any member of Congress received a copy of the report—or relied on it in voting for the provision—is unknown. *See Kosak,* 465 U.S. at 856–57, 104 S.Ct. at 1524–25.

Other aspects of § 2680(c)'s origin are much more compelling. Congress carved out the various § 2680 exceptions, at least in part, in order to preclude tort suits against the government when other "adequate reme-

---

2. The related canon *noscitur a sociis*—or "it is known from its associates"—suggests the same result. *See Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961), holding that, in the clause "exploration, discovery, or prospecting," the word "discovery" meant only the discovery of mineral resources, and not the scientific "discovery" of a patented product.

dies were already available." *Kosak,* 465 U.S. at 858, 104 S.Ct. at 1526. Both the Senate and the House committee reports state that the § 2680 exceptions covering "claims arising out of the loss or miscarriage of postal matter; the assessment or collection of taxes or assessments; the detention of goods by customs officers; admiralty and maritime torts; deliberate torts such as assault and battery; and others" were meant to exempt from the FTCA "certain governmental activities" which either "should be free from the threat of damage suits or for which adequate remedies are already available." S.Rep. No. 1400, 79th Cong., 2d Sess. 33 (1946); H.R.Rep. No. 1287, 79th Cong., 1st Sess. 6 (1945).

Claims against federal officers carrying out the customs and tax laws were among those for which adequate remedies were already available. At common law, a plaintiff could recover in a lawsuit against a customs officer for negligently damaging goods he detained. *See Kosak,* 465 U.S. at 860, 104 S.Ct. at 1526; *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146 (4th Cir.1974); *Agnew v. Haymes,* 141 F. 631 (4th Cir.1905). And a plaintiff could recover in an action against a federal excise officer for the improper seizure of his money or property. *See, e.g., Elliott v. Swartwout,* 35 U.S. (10 Pet.) 137, 9 L.Ed. 373 (1836); *Hammond–Knowlton v. United States,* 121 F.2d 192 (2d Cir.), *cert. denied,* 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555 (1941).

Initially, these suits were considered personal actions against the individual customs officer or tax collector involved. *See* Note, *Developments in the Law: Remedies Against the United States and its Officials,* 70 Harv.L.Rev. 827, 838 (1957). But in the early 19th century, a transformation began. Congress adopted a statute in 1815 allowing any "collector, naval officer, surveyor, inspector, or any other officer, civil or military" sued in state court for an act committed "as an officer of the customs" to remove the case to federal court. *See Tennessee v. Davis,* 100 U.S. (10 Otto) 257, 267, 25 L.Ed. 648 (1879) (describing Act of Feb. 4, 1815, ch. 31, 3 Stat. 195, 198). In 1833, after one of the states attempted to outlaw the collection of

federal tariffs, *id.* at 267, Congress provided similar removal protection to federal officers collecting revenue arising from import duties. Act of Mar. 2, 1833, ch. 57, 4 Stat. 632. And in 1866, Congress extended the removal protection to officers sued for acts committed under the internal revenue laws. Act of July 13, 1866, ch. 184, 14 Stat. 98, 171 (current version at 28 U.S.C. § 1442(a)(1)); *see City of Philadelphia v. The Collector,* 72 U.S. (5 Wall.) 720, 728–29, 18 L.Ed. 614 (1866).

About the same time, Congress extended additional protection to federal officers engaged in customs and tax work. Beginning in 1863, any officer sued over his customs or tax work became entitled to indemnification, so long as a federal court certified that he had acted either with probable cause or under the orders of his supervisors. Act of Mar. 3, 1863, ch. 76, 12 Stat. 737, 741 (current version at 28 U.S.C. § 2006). As Justice Cardozo observed, this removal and indemnification process effectively transformed "the suit against the collector into a suit against the government." *George Moore Ice Cream Co. v. Rose,* 289 U.S. 373, 381, 53 S.Ct. 620, 623, 77 L.Ed. 1265 (1933) (citing *United States v. Sherman,* 98 U.S. (8 Otto) 565, 25 L.Ed. 235 (1878)).

This statutory framework remained in effect when Congress adopted the FTCA in 1948; indeed, it still exists today under 28 U.S.C. § 1442(a)(1) (removal) and 28 U.S.C. § 2006 (indemnification). When Congress exempted from the FTCA claims "arising in respect of ... the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer," 28 U.S.C. § 2680(c), plaintiffs already had another way to recover from the government for the actions of customs officers, tax officers, and other officers acting under the customs and tax laws. Those plaintiffs did not need the waiver of sovereign immunity provided by the FTCA. For them, "adequate remedies" were "already available."

The same could not be said for plaintiffs injured by federal law-enforcement officers acting outside the authority of the customs and tax laws. No federal statute indemnified federal officers for actions taken outside the customs and tax contexts. Plaintiffs injured

by such actions could not recover from the government indirectly through a fictional "personal" suit against the individual officer, and the sovereign immunity of the United States barred them from recovering in a suit against the government itself.[3] Unlike plaintiffs injured by officers acting under the tax and customs laws, then, plaintiffs injured by federal officers acting in general law-enforcement capacities had no way to recover in a suit against the government itself.

■ Read in light of this historical and statutory background, § 2680(c)'s "any other law-enforcement officer" language exempts from the FTCA only those claims arising from the actions of a federal law-enforcement officer who, while not officially a customs or tax officer, is acting under the authority of the tax or customs laws such that he would be eligible for indemnification under 28 U.S.C. § 2006.

■ To resolve the case before us, then, we must ask whether the postal inspector who seized Bazuaye's bail money would be eligible for indemnification under § 2006. The answer is no. The statute purportedly authorizing the seizure—18 U.S.C. § 981—is part of the criminal code, not the revenue or customs laws. Moreover, the bail money was seized not in an effort to enforce the tax or customs laws, but rather in the course of an investigation into alleged criminal activity which had little if anything to do with taxes or customs. *Cf. People's United States Bank v. Goodwin*, 162 F. 937 (C.C.E.D.Mo.1908) (postal inspector sued for libel as a result of action unrelated to raising revenue could not invoke statute providing for removal of cases "against any officer appointed under or acting by authority of any revenue law of the United States"). True, the criminal statute purportedly authorizing the seizure directs officers acting under it to follow the procedures outlined in the customs laws. 18 U.S.C. § 981(d). But a law-enforcement officer seizing property in the course of a crimi-

nal investigation is not acting as a customs officer merely because he must follow customs procedures in carrying out duties authorized by the criminal law. Accordingly, we hold that § 2680(c) does not preclude Bazuaye from pursuing an FTCA claim arising out of that seizure.

\* \* \*

Bazuaye raises another argument for the first time on appeal: A seizure is not a "detention" and money orders, money transfers and cash are not "goods or merchandise" within the meaning of § 2680(c). Given our resolution of this case, there is no reason for departing from our usual practice of refusing to consider issues not raised before the district court. *See Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 663 (D.C.Cir.1994).

■ The government also has a new argument: under *United States v. Price*, 914 F.2d 1507 (D.C.Cir.1990), the district court had no jurisdiction over Bazuaye's FTCA claim. Challenges to subject matter jurisdiction can be raised for the first time on appeal. *See Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804). Raising the challenge is one thing; succeeding is another. *Price* held only that once the government initiates administrative forfeiture proceedings, the court has no jurisdiction to consider a defendant's motion for return of property under Federal Rule of Criminal Procedure 41(e). 914 F.2d at 1513. Bazuaye has not made such a motion, and even if, as the government claims, *Price* extends to "the issue of return of property" outside the Rule 41(e) context, it still would not apply. Bazuaye is not seeking the "return of property." He is seeking money damages for negligence and intentional interference with his rights—relief available under the Federal Tort Claims Act but not in the administrative proceedings. *See Beins v. United States*, 695 F.2d 591, 599 (D.C.Cir.1982). Furthermore, while the Federal Rules of Criminal Proce-

---

**3.** In 1922, Congress authorized department and agency heads to give claimants summary relief for "damages to or loss of privately owned property ... caused by the negligence of any officer or employee of the Government acting within the scope of his employment." Small Tort Claims Act, 31 U.S.C. § 215 (1940) (current version at 31 U.S.C. § 3723 (1994)); *see United States v. Yellow Cab Co.*, 340 U.S. 543, 550 n. 6, 71 S.Ct. 399, 404 n. 6, 95 L.Ed. 523 (1951). That provision did not allow suits against the government, however, and it was limited, at the time Congress adopted the FTCA, to claims not exceeding $1,000.

dure addressed in *Price* expressly barred their application in civil forfeitures, 914 F.2d at 1511; FED.R.CRIM.P. 54(b)(5), the FTCA contains no such provision. It is available even if the plaintiff could have sought administrative review instead. *Beins,* 695 F.2d at 597.

That is not to say that Bazuaye's damages claim is a cognizable one under the FTCA. We do not reach that question here. Rather we hold only that neither *Price* nor § 2680(c)

precludes Bazuaye from pursuing his FTCA claim, and we remand this case to the district court so that he may make the attempt.

*So Ordered.*