Susan **HALLOCK**, as President and 100% stockholder of Ferncliff Associates, Inc., d/b/a Multimedia Technology Center; and Ferncliff Associates, Inc., d/b/a Multimedia Technology Center, Plaintiffs,

v.

**UNITED STATES of America,**
Defendant.

No. 02–CV–942.

United States District Court,
N.D. New York.

March 21, 2003.

Kenneth M. Sissel, Lilburn, GA, for Plaintiffs.

U.S. Department of Justice, Civil Division, Torts Branch, Attorneys for Defendant, Washington, D.C. (Stephen E. Handler, of Counsel), for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs, Susan Hallock ("Hallock"), as President and sole shareholder of Ferncliff Associates, Inc., d/b/a Multimedia Technology Center, and Ferncliff Associates ("Ferncliff"), Inc., d/b/a Multimedia Technology Center, brought suit against defendant United States of America ("United States") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, alleging six causes of action: (1) negligent destruction of property; (2) conversion of property; (3) negligent bailment; (4) larceny; (5) misfeasance; and (6) personal injury (mental pain and suffering).

The United States filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Sovereign immunity is the grounds for this relief. Plaintiffs oppose. Oral argument was heard February 14, 2003, in Utica, New York. Decision was reserved.

## II. *FACTUAL BACKGROUND*

The following are the facts, taken from the pleadings, or, where undisputed, from the moving papers.

On June 8, 2000, United States Customs Service agents, along with other federal agents acting in a law enforcement capacity, served and executed a search warrant on the premises located at 194 Ferncliff Road in Mohawk, New York. Said premises served as the residence of Hallock and her husband, and as business offices for Ferncliff. Hallock is the sole stockholder of Ferncliff, a corporation authorized to do business in New York State. Pursuant to the search warrant, the agents seized computer equipment, software, and hard disk drives that allegedly had been, or were being, used by Hallock's husband to commit certain child pornography offenses in violation of 18 U.S.C. §§ 2252, 2252A.[1] Plaintiff alleges that the property taken included their "Computer Software Intellectual Property, all computerized Proprietary Computer Software Design Documents, all Computerized Personal Records, all Computerized Business Records, all Computerized Accounts, Client Files, and Business as well as Technological Trade Secrets belonging to [p]laintiffs." (First

Restated and Amended Complaint for Damages, Docket No. 10, ¶ 6).

After some disputes regarding the terms of the return of the property, on December 21, 2000, plaintiffs' property was returned to Hallock's husband. Upon arriving home, plaintiffs allege that Hallock's husband discovered that "four of the nine computer systems [seized] were damaged to the extent of being totally unusable and that the loss of three of these computers necessitated the discontinuance of normal business operations of plaintiffs." (Plaintiffs' First Amended Memorandum of Law in Opposition to the United States' Motion to Dismiss, Docket No. 20, pp. 2–3). Further, plaintiffs allege that "five computer hard disk drives were damaged to the point of complete loss of all stored data," which included all of plaintiffs' "intellectual property, software design documents, and business and personal files." (*Id.* at 3). Plaintiffs claim that "[i]ndependent third party reviews by fully qualified and licensed hard drive data recovery companies indicate the data stored on [the] hard disk drives is completely lost and unrecoverable for all time." (First Restated and Amended Complaint for Damages, Docket No. 10, ¶ 9).

After being unable to resolve the issue with the United States Attorney's Office, plaintiffs filed an administrative claim for damages with the United States Customs Service, the United States Treasury, the United States Department of Justice, the United States Postal Service, and the United States Marshals Service in the amount of $3,219,670.00. (*See* Administrative Claim for Damage, Injury, or Death, attached as part of Exh. 1 to Docket No.

1.  Plaintiffs allege that the information used as a basis for the search warrant was mistaken. According to plaintiffs, while in the course of making lawful credit card purchases on the Internet, Hallock's husband was the victim of

"identity theft," whereby his identifying information was used to establish a child pornography web site. As of this date, Hallock's husband has not been charged with any criminal offense.

10). After no action was taken on the administrative claim, plaintiffs filed a Complaint for Damages against the United States. (*See* Docket No. 1). Plaintiff thereafter filed a First Restated and Amended Complaint for Damages, amending, inter alia, the amount of damages sought to $4,421,700.00. (*See* Docket No. 10).

## III. *DISCUSSION*

### A. *MOTION TO DISMISS STANDARD*

As noted above, the United States has moved, pursuant to both Fed.R.Civ.P. 12(b)(1) and 12(b)(6), to dismiss the First Restated and Amended Complaint for Damages. While " 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined' " when a party moves pursuant to both subsections of Rule 12, *Rhulen Agency, Inc. v. Alabama Ins. Guar. Assn.*, 896 F.2d 674, 678 (2d Cir.1990) (internal citations omitted), the United States' motion is well taken even under the more lenient Rule 12(b)(6). In deciding such a motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y.1990); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988).

### B. *SOVEREIGN IMMUNITY*

It is well established that the United States is entitled to sovereign immunity and can therefore not be sued without its consent. *See Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Wilson v. United States*, 959 F.2d 12, 14 (2d Cir.1992) (citing *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981); *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir.1988)). "To alleviate the harshness of this rule, Congress enacted the Federal Tort Claims Act which permits civil actions against the United States for personal injury and property damage caused by 'the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.' " *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976). Because the FTCA is considered a waiver of the United States' sovereign immunity, it is "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Indeed, several different claims against the United States cannot lie under the FTCA, pursuant to enumerated exceptions to its invocation found in 28 U.S.C. § 2680. *See Kosak v. United States*, 465 U.S. 848, 852, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) ("[T]he [FTCA]'s broad waiver of sovereign immunity is, however, subject to 13 enumerated exceptions"). Of particular interest in this case is the exception found in 28 U.S.C. § 2680(c) (" § 2680(c)").

Section 2680(c) provides, in relevant part, that the United States may not be

sued for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the *detention* of any goods, merchandise, or other property by any officer of customs or excise or *any* other law enforcement officer[.]" 28 U.S.C. § 2680(c) (emphasis added). Plaintiff essentially makes two arguments against the applicability of this exception: (1) that the exception covers only officers performing tax or customs duties, and the duties being executed by the officers at issue here were not of those types; and (2) that plaintiffs' claims do not arise from the "detention" of goods, which is covered by the exception, but instead from the "seizure" of goods, which is not covered by the statute. Both arguments have their roots in the Sixth Circuit's opinion in *Kurinsky v. United States,* 33 F.3d 594 (6th Cir. 1994).

### 1. *Officers covered by § 2680(c)*

█ Plaintiffs first argue that the officers in question were not performing customs duties when serving and executing the search warrant because the investigation of child pornography is not within the purview of the United States Customs Service. This position is rejected. As pointed out by the United States, "an officer of the customs may ... execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States." 19 U.S.C. § 1589a(2). Under this language, in a general sense, customs officers may execute a search warrant for any crime. The interstate transportation or receipt of child pornography is made a criminal offense by 18 U.S.C. §§ 2252, 2252A. Therefore, even if executing search warrants for suspected child pornography violations is not within the normal purview of what is traditionally thought to be a customs function, it is permissible so long as the Secretary of Treasury permits it.

In addition, executing such warrants is not inconsistent with customs officers' duties. According to 19 U.S.C. § 1589(4), the Secretary of Treasury essentially defines customs duties. It appears the duties have been so defined here to include the investigation of child pornography. Customs officers have been traditionally responsible for investigating wrongdoing on a national and even global stage, and have had substantial duties in investigating and serving search warrants upon alleged purveyors of child pornography. *See United States v. Demerritt,* 196 F.3d 138 (2d Cir.1999); *United States v. Jasorka,* 153 F.3d 58 (2d Cir.1998); *United States v. Harvey,* 991 F.2d 981 (2d Cir.1993); *United States v. Swanson,* 1993 WL 372269 (N.D.N.Y. Sep.15, 1993). The advent of the Internet expanded its role considerably beyond investigation of tangible items such as paintings being smuggled into and out of the country to the investigation of crimes involving computer imagery, such as the proliferation of child pornography. Therefore, as long as the officers at issue here were acting at the Secretary of Treasury's behest, and there is no argument they were not, the position that they were not engaged in customs duties cannot be sustained.

█ Even if it is assumed that customs duties were not being executed in serving the search warrant, and that another agency's tasks—such as the FBI's—were instead being executed, the United States is still protected by § 2680(c). The Supreme Court has yet to rule whether § 2680(c) covers only law enforcement officers operating in a customs or tax capacity, *Kosak,* 465 U.S. at 852 n. 6, 104 S.Ct. 1519, and only two courts have held that it does. *See Kurinsky,* 33 F.3d at 598 (6th Cir. 1994); *Bazuaye v. United States,* 83 F.3d 482 (D.C.Cir.1996). The vast majority of

courts, including the Second Circuit and lower courts therein, have interpreted the exception's protection to extend to all law enforcement officers performing any law enforcement function. Specifically, the exception has been applied to situations involving DEA officers,[2] USDA inspectors,[3] INS border patrol officers,[4] Federal Marshals,[5] FAA employees,[6] and Bureau of Prison officials,[7] all performing jobs outside of the traditional customs context. These applications square with the Supreme Court's broad reading of § 2680(c), see *Kosak*, 465 U.S. 848, 104 S.Ct. 1519, and are a reasonable interpretation of the statutory language. Therefore, no matter how one classifies the duties executed by the officers in the instant case, the protection of § 2680(c) is available.

### 2. *"Seizure" versus "detention"*

■ Plaintiffs' other argument against the application of § 2680(c), the one to which more time is devoted, is that the exception covers only claims arising out of the "detention" of goods. According to plaintiffs, since the claims advanced here arise out of the "seizure" of goods, the exception is unavailable. In support of this argument, plaintiffs rely exclusively upon *Kurinsky*, 33 F.3d 594. In that case, the Sixth Circuit Court of Appeals contended that a "seizure" is "generally associated with a period of temporary custody or delay[,]" carrying with it "no connotation of permanent custody, nor ... necessarily suggest[ing] an adversarial interest insofar as ownership is concerned." *Id.* at 597. On the other hand, stated the court, "a seizure has an 'after-the-fact' quality not associated with a detention. When goods are seized pursuant to a lawful search, their relevance to a legal proceeding already has been predetermined... The seizure is adversarial to the ownership interest of the person from whom the property is seized." *Id.* Thus, it was concluded that because the two words had such different meanings and Congress included only one—"detention"—in § 2680(c), claims arising out of "seizures" were not covered by the exception. *Id.*

At the outset, agreement is expressed with the *Kurinsky* court's contention that a detention is distinct from a seizure.[8] The words do have different meanings in legal circles,[9] semantics, and ordinary us-

**2.** *Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2d Cir.1985); *United States v. $149,345 United States Currency,* 747 F.2d 1278 (9th Cir.1984); *Rufu v. United States,* 876 F.Supp. 400 (E.D.N.Y.1994); *Sterling v. United States,* 749 F.Supp. 1202 (E.D.N.Y. 1990).

**3.** *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481 (10th Cir.1984).

**4.** *Halverson v. United States,* 972 F.2d 654 (5th Cir.1992); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir.1988).

**5.** *Schlaebitz v. United States Department of Justice,* 924 F.2d 193 (11th Cir.1991).

**6.** *United States v. Lockheed L–188 Aircraft,* 656 F.2d 390 (9th Cir.1979).

**7.** *Crawford v. United States Department of Justice,* 123 F.Supp.2d 1012 (S.D.Miss.2000).

**8.** However, as to any notion that the consequence of this distinction is that claims arising out of the "seizure," as opposed to "detention," of property, escape the reach of § 2680(c), no opinion is herein expressed or should be inferred. As plaintiffs' claims clearly do not arise out of the "seizure" of their property, the question is not properly presented in this case.

**9.** *Compare* BLACK'S LAW DICTIONARY 1363 (7th ed.1999) (defining seizure as "[t]he act or an instance of taking possession of ... property by *legal* right or process") *with* BLACK'S LAW DICTIONARY 459 (7th ed.1999) (defining detention as "[t]he act or fact of holding a person [i.e. property] in custody").

age.[10] What is rejected, however, is plaintiffs' application of the distinction to the instant case. While plaintiffs intimate that the facts of *Kurinsky* are analogous to those of the case at bar, a cursory examination reveals this is not true. The plaintiffs in *Kurinsky* alleged that their property—seized by the FBI pursuant to a search warrant issued for suspicion of wire fraud and unauthorized reception of cable services—was "mishandled and damaged" *during* its seizure. *Id.* at 595. Accordingly, "the Kurinskys ... alleg[ed] damages stemming from the *execution* of the search warrant." *Id.* (emphasis added). Here, plaintiffs are not alleging the damage was caused by the seizure and removal from the home of the computer equipment, software, and hard disk drives, or in any way by the execution of the search warrant. Instead, plaintiffs base their claims "on negligent acts *post-seizure* to a lawful search warrant." (Plaintiffs' First Amended Memorandum of Law in Opposition to the United States' Motion to Dismiss, Docket No. 20, p. 4) (emphasis added).

Use of the phrase "post-seizure negligent acts" is most fairly read to mean that the claims are based on damage allegedly inflicted during the "detention" of plaintiffs' property. By use of the prefix "post," plaintiffs are implicitly admitting that the alleged "negligent acts" occurred "after" the seizure. *See* WEBSTER'S NEW WORLD DICTIONARY 1054 (3d ed.1988) (defining "post-" as meaning "after in time, later (than), following"). Simply put, "post-seizure" cannot be read to mean "seizure."

Because § 2680(c)'s applicability turns on the classification of the time period in which plaintiffs allege their property was damaged or destroyed through the negligence of agents of the United States, such classification must be determined.

At the most fundamental level, it is known that the alleged damage and destruction occurred at some point "after" or "post-seizure," but before the property was eventually returned to plaintiffs. It is also known that plaintiffs are alleging such damage and destruction occurred while the property was in the possession, actual or constructive, of agents of the United States. The only time period that fits both of these criteria is when the property was being "detained" by the officers.

In summary, property was seized from plaintiffs' possession on June 8, 2000. The instant the property was seized and transported elsewhere, it was detained. There is simply no other way to classify it. In other words, the property seized was thereafter detained within the control and possession of agents of the United States from June 8, 2000, to December 21, 2000. It is within this time period that plaintiff alleges the damage and destruction occurred. However, as § 2680(c) provides protection during detentions, it is also within this time period that the United States retained its sovereign immunity. Therefore, though sympathy is most certainly expressed for plaintiffs' situation, recourse through the FTCA is unavailable.[11]

---

10. *Compare* WEBSTER'S NEW WORLD DICTIONARY 1216 (3d ed.1988) (defining seize as "to take forcible legal possession[,]" or "to take forcibly and quickly"), *with* WEBSTER'S NEW WORLD DICTIONARY 375 (3d ed.1988) (defining detention as "a keeping in custody").

11. Indeed, this decision is not to be read as condoning the damage or destruction of any property seized pursuant to a search warrant.

Though plaintiffs most certainly have suffered injury, assuming the truth of their allegations, the importance of the policy bases behind § 2680(c) cannot be undermined if the United States is to aggressively pursue criminals unrestrained by what would in other contexts be normal legal restraints on the treatment of others' property. By the same token, this decision is also not to be read as concluding that plaintiffs' property was damaged or de-

### 3. *Claims barred*

■ It must finally be determined which of plaintiffs' claims are precluded pursuant to the applicability of § 2680(c). As noted, the exception bars any claim "arising in respect of" the detention of any goods or property by a customs officer or any law enforcement officer. Plaintiff has advanced claims for negligent destruction of property, conversion, negligent bailment, larceny, misfeasance, and personal injury. The Supreme Court has determined that "arising in respect of" "means 'any claim arising *out of* the detention of goods', and includes a claim resulting from negligent handling or storage of detained property." *Kosak,* 465 U.S. at 854, 104 S.Ct. 1519 (emphasis added).[12] All of plaintiffs' claims arise "out of the detention" of their property, and are thus precluded by § 2680(c). As the Court in *Kosak* noted, any argument "that § 2680(c) should not be construed in a fashion that denies an effectual remedy to many persons whose property is damaged through the tortious conduct of customs officials

... has force, but it is properly addressed to Congress[.]" *Id.* at 862, 104 S.Ct. 1519.

### 4. *Lost business opportunities*

The United States has also moved to dismiss plaintiffs' claim for lost business opportunities and lost profits on the grounds that such claims are for "interference with contract right," and are excluded from the FTCA waiver of sovereign immunity pursuant to 28 U.S.C. § 2680(h). Because all claims must be dismissed as precluded pursuant to § 2680(c), a ruling need not be made on this point of the defendant's motion.

## IV. CONCLUSION

Pursuant to § 2680(c), plaintiffs are precluded from pursuing their claims under the Federal Tort Claims Act. All of plaintiffs' claims arise out of the detention of their property by agents of the United States, and are therefore barred.

Accordingly, it is

ORDERED that the First Restated and Amended Complaint for Damages is DISMISSED.

---

stroyed by agents of the United States, through negligence or otherwise. The same is assumed only for the purposes of disposing of this motion.

12. It should be noted that the Second Circuit has held that the "exception does not apply where the goods are no longer in possession of the government, and therefore cannot be regarded as being 'detained.'" *Mora v. United States,* 955 F.2d 156, 160 (2d Cir.1992). While no opinion is expressed as to this holding's consistency or inconsistency with *Kosak*—namely because plaintiffs make no claims that the damage was inflicted after the United States' possession of their property ceased—*Mora* is not followed to the extent it relies upon its prior decision in *Alliance Assurance Co. v. United States,* 252 F.2d 529 (2d

Cir.1958), as the sole support for the above-quoted language. The Supreme Court specifically took issue with the statement by the court in *Alliance Assurance* that the exception does not bar actions based on the negligent destruction of property in the possession or control of customs officers and the Court's holding, on its face, seems very much to usurp, or at the very least contradict, the statement. *See Kosak,* 465 U.S. at 854–55, 104 S.Ct. 1519 (quoting and disagreeing with *Alliance Assurance,* 252 F.2d at 534). Therefore, to the extent *Mora* is inconsistent with *Kosak,* it is rejected. *See Haughton v. F.B.I.,* No. 98 Civ. 3418(BSJ), available at 1999 WL 1133346, at *6 n. 1 (S.D.N.Y. Dec.10, 1999) (following *Kosak* over *Mora* and *Alliance Assurance* ) (collecting cases).

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.